**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**

GENOCIDE VICTIMS OF KRAJINA,

                        Plaintiffs,

        v.

L-3 COMMUNICATIONS CORPORATION
and MPRI, INCORPORATED,

                    Defendants.

Civ. Action No. 10-cv-5197

Hon. Ruben Castillo, U.S.D.J.

Hon. Geraldine Soat Brown, U.S.M.J.

---

**MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS OR, IN THE ALTERNATIVE, TO TRANSFER VENUE**

---

*On the brief:*

Jason W. Rockwell
Justin S. Strochlic
Anthony Molloy III
Patrick C. Gilmartin

James E. Tyrrell, Jr.
Joseph E. Hopkins
Lisa Ann T. Ruggiero
PATTON BOGGS LLP
One Riverfront Plaza, 6th Floor
Newark, New Jersey 07102
Tel: (973) 848-5600
Fax: (973) 848-5601
*Attorneys for Defendants L-3 Communications Corporation and MPRI*

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ...................................................................... 1

STATEMENT OF COMPLIANCE WITH STANDING ORDERS ............................................. 1

PROCEDURAL HISTORY AND STATEMENT OF FACTS...................................................... 2

ARGUMENT ........................................................................................... 2

    I.    THIS COURT LACKS PERSONAL JURISDICTION OVER L-3 AND MPRI............................................................................................... 3

        A.    A Subsidiary's Presence in Illinois is Insufficient to Extend General Personal Jurisdiction Over Defendants. ......................................... 4

        B.    Defendants' Business Activities in Illinois Are Not "Continuous and Systematic" to the Degree Necessary for General Personal Jurisdiction................................................................................ 6

    II.    IN THE ALTERNATIVE, VENUE SHOULD BE TRANSFERRED UNDER 28 U.S.C. § 1404(A) TO THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK............................ 8

        A.    The SDNY is a Proper and More Convenient Venue for the Parties and the Witnesses......................................................................... 9

        B.    Transfer to the SDNY Would Serve the Interest of Justice. ...................... 14

CONCLUSION....................................................................................... 15

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Abbott Laboratories v. Mylan Pharmaceuticals, Inc.*,
2006 WL 850916 (N.D. Ill. 2006) ........................................................................7

*Am. Constr. Mach. & Equip. Corp. v. Mechanised Constr. of Pakistan Ltd.*,
1986 WL 2973 (S.D.N.Y. Mar. 5, 1986) ..............................................................14

*Anadigics, Inc. v. Raytheon Co.*,
903 F. Supp. 615 (S.D.N.Y. 1995).........................................................................11

*Asahi Metal Indus. Co. v. Superior Ct. of Cal.*,
480 U.S. 102 (1987)................................................................................................4

*Beach v. United Airlines, Inc.*,
202 F. Supp. 2d 807 (C.D. Ill. 2002) ...................................................................10

*Bohler-Uddeholm Corp. v. Cloeren Co.*,
1995 WL 642793 (N.D. Ill. Mar. 9, 1995)..............................................................9

*Broadnax v ABF Freight Sys.*,
169 F.R.D. 628 (N.D. Ill. 1996)............................................................................11

*Burger King Corp. v. Rudzewicz*,
471 U.S. 462 (1985)................................................................................................7

*Cent. States, Se. & Sw. Areas Pension Fund v. Reimer Express World Corp.*,
230 F.3d 934 (7th Cir. 2000) .............................................................................5, 6

*Chicago, R. I. & P. R. Co. v. Igoe*,
220 F.2d 299 (7th Cir. 1955) ...............................................................................11

*Crum & Forster Specialty Ins. Co. v. Extended Stay America, Inc.*,
375 Ill.App. 3d 654, 873 N.E.2d 964 (Ill.App. 1st District 2007)............................5

*Dental Arts Lab., Inc., v. Studio 360 The Dental Lab, LLC*,
2010 WL 4877708 (N.D. Ill. Nov. 23, 2010) ........................................................3

*EM Ltd. v. The Republic of Argentina*,
720 F. Supp. 2d 273 (S.D.N.Y. 2010)...................................................................14

*Enplanar, Inc. v. Marsh*,
11 F.3d 1284 (5th Cir. 1994) ...............................................................................13

*Eskofot A/S v. E.I. du Pont de Nemours & Co.*,
　　872 F. Supp. 81 (S.D.N.Y. 1995)..........................................................................10

*General Star Nat. Ins. Co. v. Administratia Asigurarilor de Stat*,
　　713 F.Supp.2d 267 (S.D.N.Y. 2010).....................................................................14

*Georgouses v. Natec Res., Inc.*,
　　963 F. Supp. 728 (N.D. Ill. 1997) ...................................................................10, 11

*Gueorguiev v. Max Rave, LLC*,
　　526 F. Supp.2d 853 (N.D. Ill. 2007) .......................................................................9

*Haedike v. Kodiak Research, Ltd.*,
　　814 F.Supp. 679 (N.D. Ill. 1992) .............................................................................2

*Helicopteros Nacionales de Colom., S.A. v. Hall*,
　　466 U.S. 408 (1984)................................................................................... 4, 6, 7

*Ill. Computer Research, LLC v. HarperCollins Publrs., Inc.*,
　　2010 WL 4877501 (N.D. Ill. Nov. 22, 2010) ....................................................9, 11

*In re National Presto Industries, Inc.*,
　　347 F.3d 662 (7th Cir. 2003) .................................................................................12

*In re Volkswagen of Am., Inc.*,
　　545 F.3d 304 (5th Cir. 2008) .................................................................................10

*Jaramillo v. DineEquity, Inc.*,
　　664 F. Supp.2d 908 (N.D. Ill. 2009) ........................................................................9

*Law Bulletin Publ'g Co. v. LRP Publ'ns, Inc.*,
　　992 F. Supp. 1014 (N.D. Ill. 1998) ........................................................................14

*McGill v. Gigantex Technologies Co., Ltd.*,
　　2005 WL 3436403 (N.D. Ill.) ...................................................................................7

*Merck & Co., Inc. v. Barr Labs.*,
　　179 F.Supp.2d 368 (D. Del. 2002)...........................................................................7

*Mobile Anesthesiologists Chicago, LLC v. Anesthesia Assocs. of Houston Metroplex*,
　　623 F.3d 440 (7th Cir. 2010) ...................................................................................3

*Moore v. Olson*,
　　368 F.3d 757 (7th Cir. 2004) ...................................................................................9

*Nat'l Prod. Workers Union Trust v. CIGNA Corp.*,
　　2007 WL 1468555 (N.D. Ill. May 16, 2007) ...........................................................6

*Northwestern Corp. v. Gabriel Mfg. Co., Inc.*,
    1996 WL 73622 (N.D. Ill. Feb. 16, 1996) ............................................................2

*Purdue Research Found. v. Sanofi-Synthelabo, S.A.*,
    338 F.3d 773 (7th Cir. 2003) .............................................................................4, 8

*Scheidt v. Klein*,
    956 F.2d 963 (10th Cir. 1992) .........................................................................12

*Simonian v. Monster Cable Prods.*,
    2010 WL 4822899 (N.D. Ill. Nov. 22, 2010) .........................................................2

*Tamburo v. Dworkin*,
    601 F.3d 693 (7th Cir. 2010) .............................................................................3, 7

*Turnock v. Cope*,
    816 F.2d 332 (7th Cir. 1987) .............................................................................2, 4

*U.S. Titan, Inc. v. Guangzhou Zhen Hua Shipping Co., Ltd.*,
    16 F. Supp. 2d 326 (S.D.N.Y. 1998).....................................................................14

*UBID, Inc. v. The GoDaddy Group Inc.*,
    623 F.3d 421 (7th Cir. 2010) .......................................................................4, 6, 7, 8

*United States v. Kim*,
    246 F.3d 186 (2d Cir. 2001)...............................................................................15

*Vandeveld v. Christoph*,
    877 F. Supp. 1160 (N.D. Ill. 1995) ......................................................................2

*Vanguard Mun. Bond Fund v. Thomson Publ. Corp.*,
    974 F. Supp. 1159 (N.D. Ill. 1997) ......................................................................14

*Waste Distillation Tech., Inc. v. Pan Am. Res., Inc.*,
    775 F. Supp. 759 (D. Del. 1991)..........................................................................10

*Worldwide Volkswagen Corp. v. Woodson*,
    444 U.S. 286 (1980)..........................................................................................7

## STATUTES

28 U.S.C. § 1350............................................................................................2

28 U.S.C. § 1391.......................................................................................1, 9, 10

28 U.S.C. § 1404...................................................................................1, 2, 8, 11, 15

§ 735 ILCS 5/2-209 ........................................................................................................3

**OTHER AUTHORITIES**

Federal Rule of Civil Procedure 12(b) ............................................................1, 2, 8, 15

Wright & Miller, *Fed. Prac. & Proc.* Fed. Prac. & Proc. Juris. § 3811.1 (3d ed.) .........................8

## PRELIMINARY STATEMENT

Plaintiffs have brought suit in the United States District Court for the Northern District of Illinois against Defendants L-3 Communications Corporation ("L-3") and MPRI, Inc. ("MPRI")[1] (collectively, "Defendants"), headquartered in New York and Virginia, respectively, for their alleged activities more than fifteen years ago in the Republic of Croatia ("Croatia").  Neither corporation is organized under the laws of Illinois.  Nor does either have continuous and systematic contacts with Illinois.  Accordingly, the Amended Complaint ("Complaint") should be dismissed both for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2) and because the action is improperly venued in this District pursuant to Federal Rule of Civil Procedure 12(b)(3) and 28 U.S.C. § 1391(b).

In the alternative, this action should be transferred to the United States District Court for the Southern District of New York ("SDNY") pursuant to 28 U.S.C. § 1404(a) for the convenience of the parties and in the interest of justice.  There is no connection between the allegations in the Complaint and this District.  The only connection to this District is that one named Plaintiff in a putative class whose members may span the entire globe allegedly resides here.  This fact is insufficient to overcome Defendants' meaningful connections to the SDNY.

## STATEMENT OF COMPLIANCE WITH STANDING ORDERS

As per this Court's Standing Orders, counsel for L-3 and MPRI and Plaintiffs' counsel have exchanged written correspondence and have engaged in telephone conferences in an attempt to resolve this issue.  These attempts have been unsuccessful.

---

[1] MPRI is improperly named as MPRI, Incorporated.  MPRI is an unincorporated division of L-3 Services, Inc., which is a wholly-owned subsidiary of L-3 Communications Corporation.  (Certification of David Reilly, Esq. at ¶¶ 7, 13 ("Reilly Cert.").)

## PROCEDURAL HISTORY AND STATEMENT OF FACTS

On August 17, 2010, Plaintiffs filed suit against Defendants based on the Alien Tort Statute ("ATS"), 28 U.S.C. § 1350. On behalf of a putative class of ethnic Serbians, the Complaint seeks damages for injuries purportedly resulting from a Croatian military offensive in 1995. This District is not the proper venue for these claims.

## ARGUMENT

The Court should dismiss this action pursuant to Rules 12(b)(2) and 12(b)(3) if, taking all of the allegations in the Complaint as true unless contradicted by Defendants' sworn testimony, the Court finds that general personal jurisdiction does not exist over the Defendants. *Turnock v. Cope*, 816 F.2d 332, 333 (7th Cir. 1987); *Northwestern Corp. v. Gabriel Mfg. Co., Inc.*, 1996 WL 73622, *2 (N.D. Ill. Feb. 16, 1996). The Plaintiffs' allegations must affirmatively establish jurisdiction and venue as to each Defendant or be dismissed. *Turnock*, 816 F.2d at 333; *Haedike v. Kodiak Research, Ltd.*, 814 F.Supp. 679, 684 (N.D. Ill. 1992).

In the alternative, the Court should transfer this action pursuant to 28 U.S.C. § 1404(a) if venue is proper in both the transferor and transferee districts and transfer will serve the convenience of the parties and the witnesses as well as the interest of justice. *Vandeveld v. Christoph*, 877 F. Supp. 1160, 1167 (N.D. Ill. 1995). "The movant bears the burden of establishing, by reference to particular circumstances, that the transferee forum is clearly more convenient" under § 1404(a). *Simonian v. Monster Cable Prods.*, 2010 WL 4822899, *1 (N.D. Ill. Nov. 22, 2010) (citations omitted). In addressing a motion to transfer, the Court is not limited to the allegations in the complaint and may consider certifications. *Id*. at *3 (citation omitted); s*ee also Midwest Precision Servs., Inc. v. PTM Indus. Corp.*, 574 F. Supp. 657, 659 (N.D. Ill. 1983).

## I.     THIS COURT LACKS PERSONAL JURISDICTION OVER L-3 AND MPRI

Plaintiffs claim that personal jurisdiction exists over Defendants in Illinois because "L-3 maintains a division within this judicial district and conducts substantial business within this jurisdiction."  (Compl. ¶ 23.)  Neither statement is accurate and, even if true, these facts alone would not give rise to personal jurisdiction over Defendants.[2]

Where no relevant federal statute contains provisions for nationwide service of process, "personal jurisdiction is governed by the law of the forum state."  *Tamburo v. Dworkin*, 601 F.3d 693, 700 (7th Cir. 2010).  The ATS contains no provision for nationwide service and, therefore, Illinois' "long-arm" statute controls.  *See* § 735 ILCS 5/2-209.  As a practical matter, however, because the Illinois statute contains a "catch-all" provision allowing a court to "exercise jurisdiction on any other basis now or hereafter permitted by the Illinois Constitution and the Constitution of the United States," the state and federal due process analyses merge into a single inquiry.  *Tamburo*, 601 F.3d at 700.  In short, there is "no operative difference between these two constitutional limits."  *See Mobile Anesthesiologists Chicago, LLC v. Anesthesia Assocs. of Houston Metroplex*, 623 F.3d 440, 443 (7th Cir. 2010).  As a result, Plaintiffs must demonstrate that Defendants have had "continuous and systematic contacts" with Illinois such that exercising personal jurisdiction over Defendants would not offend notions of "fair play and substantial justice."  *Dental Arts Lab., Inc., v. Studio 360 The Dental Lab, LLC*, 2010 WL 4877708, *3 (N.D. Ill. Nov. 23, 2010).  Plaintiffs are unable to do so.

General jurisdiction requires that a non-resident corporation's "continuous and systematic" contacts be "so extensive to be tantamount to [the corporation] being constructively

---

[2] It is beyond dispute that the injuries alleged in the Complaint are purported to have occurred in the Balkans and not in Illinois.  (*See* Compl. ¶¶ 3, 8.)  As such, there can be no claim, nor do Plaintiffs allege, that this Court has specific personal jurisdiction over Defendants.  This analysis is therefore limited to issues pertaining to general personal jurisdiction.

present in the state to such a degree that it would be fundamentally fair to require it to answer in an [Illinois] court in any litigation arising out of any transaction or occurrence taking place anywhere in the world." *Purdue Research Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 787 (7th Cir. 2003); *see also UBID, Inc. v. The GoDaddy Group Inc.*, 623 F.3d 421, 426 (7th Cir. 2010) (finding corporation was not subject to general personal jurisdiction in Illinois even though "its contacts are extensive and deliberate."). Whether a corporation's in-state activities are sufficiently systematic and continuous to warrant personal jurisdiction is determined on a case-by-case basis from factors such as the amount of sales derived from the state, involvement in the political process of the state, whether the defendant has a place of business or is licensed in the forum state, whether defendant advertises or solicits business in the forum state, whether the defendant has designated an agent for service of process in the forum state, and if the defendant has a channel for providing advice to customers in the forum state. *See Asahi Metal Indus. Co. v. Superior Ct. of Cal.*, 480 U.S. 102, 112 (1987); *Helicopteros Nacionales de Colom., S.A. v. Hall*, 466 U.S. 408, 416-17 (1984); *Turnock v. Cope*, 816 F.2d 332, 333 (7th Cir. 1987). Applying these factors here, it is beyond dispute that neither L-3 nor MPRI have "continuous and systematic" contacts with Illinois sufficient to establish general personal jurisdiction.

**A. A Subsidiary's Presence in Illinois is Insufficient to Extend General Personal Jurisdiction Over Defendants**

Plaintiffs suggest incorrectly that personal jurisdiction exists over both L-3 and MPRI because they maintain a "division" in Illinois and "conduct substantial business" there. (Compl. ¶ 23.) The most probable match to the vague and incorrect description of the "division" described in the Complaint is Electrodynamics, Inc., a wholly owned subsidiary—not an unincorporated division—of L-3 that has property in and conducts business in Illinois. (*Id.*;

Certification of David Reilly, Esq. at ¶ 18 ("Reilly Cert."); *see also* L-3 Communications

Holdings, Inc., 2009 Annual Report (Form 10-K), at Ex. 21 (Feb. 16, 2010) ("L-3 10-K").)

However, the mere presence of a subsidiary is not sufficient to establish jurisdiction over

its parent: "[C]onstitutional due process requires that personal jurisdiction cannot be premised on

corporate affiliation or stock ownership alone where corporate formalities are substantially

observed and the parent does not exercise an unusually high degree of control over the

subsidiary." *Cent. States, Se. & Sw. Areas Pension Fund v. Reimer Express World Corp.*, 230

F.3d 934, 943 (7th Cir. 2000). Plaintiffs do not even attempt to establish that either L-3 or MPRI

has the requisite "unusually high degree of control" over Electrodynamics that would warrant

imputing any personal jurisdiction over Defendants. That is because no such control exists.

Parent companies "necessarily control, direct and supervise subsidiaries to some extent."

*See, e.g., Crum & Forster Specialty Ins. Co. v. Extended Stay America, Inc.*, 375 Ill.App. 3d 654,

663, 873 N.E.2d 964, 973 (Ill.App. 1st District 2007). But general personal jurisdiction will not

extend from a subsidiary to a parent company unless the subsidiary "is acting as the parent

corporation's Illinois agent in the sense of conducting the parent's business rather than its own."

*Id.* Electrodynamics, an Arizona corporation, maintains an independent executive leadership and

has a publicly available "Organization/Responsibility Chart" that does not include the parent

company, L-3. (Reilly Cert. at ¶¶ 19, 21; *see also* Electrodynamics Inc., Quality Manual, p. 40,

November 16, 2010 ("EDI QC Manual"), available at http://www.edi.l-

3com.com/pdfs/Quality%20Manual%20%286008725M%29.pdf (accessed Jan. 16, 2011)). And,

far from conducting L-3's business, Electrodynamics counts L-3 as one of its fifteen major

*customers*. (Reilly Cert. at ¶ 22**;** *see also* EDI QC Manual, p.11). Thus, Plaintiffs cannot point

to any facts demonstrating the "unusually high degree of control" necessary to justify exercising

general personal jurisdiction over L-3 due to Electrodynamics' activities in Illinois. *Cent. States*, 230 F.3d at 943; *Nat'l Prod. Workers Union Trust v. CIGNA Corp.*, 2007 WL 1468555, *3 (N.D. Ill. May 16, 2007) ("the general rule is that stock ownership in or affiliation with a corporation, standing alone, is not a sufficient minimum contact to support personal jurisdiction.").

Electrodynamics is not conducting the business of MPRI, nor conducting any business *with* MPRI. (Reilly Cert. ¶¶ 20, 23.) Electrodynamics develops products for the aerospace industry, including voice/data recorders, arming and firing devices, and specialized data storage units for aircraft. (Reilly Cert. ¶ 24.) MPRI provides education, training, development, and staffing solutions to militaries and law enforcement agencies. (Reilly Cert. ¶ 25.) Put simply, the engineers at Electrodynamics are not performing the work of the military and law enforcement experts at MPRI. It is not surprising that Plaintiffs have not made such an allegation. Nor have they alleged facts indicating that MPRI exercised any degree of control ("unusually high" or otherwise) over Electrodynamics. Accordingly, Electrodynamics' activities do not expose either L-3 or MPRI to suit in Illinois.

**B.    Defendants' Business Activities in Illinois Are Not "Continuous and Systematic" to the Degree Necessary for General Personal Jurisdiction**

Plaintiffs claim that Defendants "conduct[] substantial business within this judicial district." (Comp. ¶ 23.) However, Defendants' limited business activities in Illinois do not rise to the level of the "continuous and systematic" contacts required to justify the application of general personal jurisdiction. *See Helicopteros*, 466 U.S. at 416-17; *UBID, Inc.*, 623 F.3d at 426.

L-3, a wholly-owned subsidiary of L-3 Communications Holdings, Inc.,[3] is a conglomerate of 147 subsidiary companies, none of which are organized in Illinois. (Reilly Cert.

---

[3] L-3 Communications Holdings, Inc. is a publicly traded company incorporated in Delaware with its principal place of business in New York City. (*See* L-3 10-K; Reilly Cert. ¶ 26.)

¶¶ 2, 3; L-3 10-K Ex. 21)  And L-3 itself is not licensed to do business in Illinois.  As of 2010, L-3 and its subsidiaries together had approximately 62,000 full time employees.  (Reilly Cert ¶ 5.) Only 0.57% of them (356 out of 62,000) are from Illinois, and only *one* of those Illinois employees—an attorney—is an employee of L-3 (as opposed to an employee of a subsidiary). (Reilly Cert. ¶¶ 4, 5.)  Furthermore, L-3 derived just 0.46% of its revenue from Illinois in 2009. (Reilly Cert. ¶ 6;) *see also McGill v. Gigantex Technologies Co., Ltd.*, 2005 WL 3436403, *3 (N.D. Ill. Dec. 12, 2005) (sales less than 4% in previous year not sufficient to confer general jurisdiction); *Merck & Co., Inc. v. Barr Labs.*, 179 F.Supp.2d 368, 375 (D. Del. 2002) (holding that less than 1% of total revenue is insufficient to establish general jurisdiction); *see also Abbott Laboratories v. Mylan Pharmaceuticals, Inc.*, 2006 WL 850916, *3 (N.D. Ill. Mar. 28, 2006). Relative to its size, therefore, L-3 generates only a miniscule fraction of its total revenue from Illinois, and certainly not enough to expect to be haled into Illinois Court or reach the "continuous and systematic" threshold articulated by the United States Supreme Court.  *Id.*; *see also Helicopteros*, 466 U.S. at 415-416; *Burger King Corp. v. Rudzewicz*, 471 U.S. 462 (1985); *Worldwide Volkswagen Corp. v. Woodson*, 444 U.S. 286 (1980); *UBID, Inc.*, 623 F.3d at 426 (no general jurisdiction despite millions in revenue derived from Illinois).

Plaintiffs also do not and cannot establish that MPRI has anything more than isolated or sporadic contacts with Illinois.  *Tamburo*, 601 F.3d at 700 (internal citations omitted) ("the contacts must be sufficiently extensive and pervasive to approximate physical presence.  As such, isolated or sporadic contacts . . . are insufficient for general jurisdiction.").  MPRI is an unincorporated division of L-3 Services, Inc. ("L-3 Services"), a wholly-owned subsidiary of L-3.  (Reilly  Cert. ¶¶ 7, 13.)  L-3 Services is a Delaware Corporation, headquartered in Virginia, and is licensed to do business in Illinois.  (Reilly Cert. ¶ 8.)  Plaintiffs assert that personal

jurisdiction over MPRI is proper because "MPRI conduct[s] business within the district." (Compl. ¶ 25.) But, as noted, more than just conducting occasional business or having a parent that is licensed to do business in a given state is required to support the imposition of general personal jurisdiction. *See Purdue Research Found*, 338 F.3d at 787; Wright & Miller, *Fed. Prac. & Proc.*, 14D Fed. Prac. & Proc. Juris. § 3811.1 (3d ed.) (footnotes omitted) ("The facts of incorporation or license to do business merely are factors in determining whether the corporation is subject to personal jurisdiction in those places and are no longer in themselves a sufficient base for venue.").

MPRI's projected revenue from its work in Illinois is approximately $174,000 in 2010. (Reilly Cert. ¶ 16;) *compare to UBID, Inc.*, 623 F.3d at 426. Further, MPRI does not have a physical presence in Illinois and only 0.1% of its employees (5 out of 5000) are located in Illinois.[4] (Reilly Cert. ¶¶ 14, 15.) Such *de minimis* and isolated contacts do not suffice to establish general personal jurisdiction over MPRI.

For the foregoing reasons, Defendants are not subject to personal jurisdiction in Illinois and the Complaint should be dismissed pursuant to Fed. R. Civ. P. Rules 12(b)(2) and 12(b)(3).

## II. IN THE ALTERNATIVE, VENUE SHOULD BE TRANSFERRED UNDER 28 U.S.C. § 1404(A) TO THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK

If the Court determines that it has general personal jurisdiction over L-3 and MPRI, Defendants alternatively request that the Court transfer venue to the SDNY, which is closer to L-3's headquarters and to the witnesses and evidence relevant to this case. Transfer to the SDNY is appropriate under § 1404(a) because: (1) venue and jurisdiction are proper in the SDNY; (2)

---

[4] L-3 Services has eighteen subsidiaries, including MPRI. (Reilly Cert. ¶ 9.) The L-3 Services subsidiaries, in sum, have 102 full-time employees currently working in Illinois, had $7.9 million in sales in Illinois in 2009, and do not have a physical presence in Illinois. (Reilly Cert. ¶¶ 10-12.)

the SDNY is more convenient for both the parties and witnesses; and (3) transfer would serve the interest of justice. *Gueorguiev v. Max Rave, LLC*, 526 F. Supp.2d 853, 856 (N.D. Ill. 2007).

### A.     The SDNY is a Proper and More Convenient Venue for the Parties and the Witnesses

Venue is proper in the SDNY because both Defendant L-3 and its parent, L-3 Communications Holdings, Inc., are headquartered at 600 Third Avenue, New York, New York, which also constitutes their principal place of business.  (Reilly Cert. ¶ 26.)  L-3 therefore "resides" in the SDNY for purposes of 28 U.S.C. § 1391(b) because it is subject to personal jurisdiction there. *See*, *e.g.*, *Bohler-Uddeholm Corp. v. Cloeren Co.*, 1995 WL 642793, *3 (N.D. Ill. Mar. 9, 1995).  Venue in the SDNY would also be proper with respect to MPRI because MPRI consents to jurisdiction there for the instant action.  (Reilly Cert. ¶ 28;) *see also Moore v. Olson*, 368 F.3d 757, 759 (7th Cir. 2004) ("Defendants are entitled to waive any shortcomings in venue or jurisdiction over the person").

The SDNY is also, on balance, more convenient for all involved in this case.  To evaluate the convenience of one venue over another, courts typically consider five factors: (1) the plaintiff's choice of forum; (2) the situs of the material events; (3) the relative ease of access to sources of proof; (4) the convenience of the parties; and (5) the convenience of the witnesses. *Jaramillo v. DineEquity, Inc.*, 664 F. Supp.2d 908, 914 (N.D. Ill. 2009).  Each of these considerations supports transfer to the SDNY.

Deference to a plaintiff's choice of forum "is lessened if the forum does not have a significant relationship to the material events leading to the litigation." *Ill. Computer Research, LLC v. HarperCollins Publrs., Inc.*, 2010 WL 4877501, *2 (N.D. Ill. Nov. 22, 2010) (citations omitted).  Illinois' relationship to the events alleged in the Complaint is tenuous, if not non-

existent. It is, of course, beyond dispute that not a single allegation in the Complaint touches upon *any* conduct in Illinois. (Compl. ¶¶ 2, 6.)

The convenience of the parties also favors a transfer to the SDNY. One of the two Plaintiffs who may serve as class representatives—Plaintiff Milena Jovic—resides in Serbia. (Compl. ¶¶ 2, 6.) The SDNY is arguably more convenient for her than Illinois. *See*, *e.g.*, *Eskofot A/S v. E.I. du Pont de Nemours & Co.*, 872 F. Supp. 81, 95-96 (S.D.N.Y. 1995) (transfer denied because New York was more convenient for European witnesses than Delaware).

Also, although Plaintiffs assert that "[v]enue is proper because numerous Plaintiffs reside in this District," no evidence is offered for this proposition.[5] (Compl. ¶¶ 7, 24.) While there is little doubt that the Chicago area is home to a substantial Serbian community, so are many other areas in the United States, including New York. Moreover, the presence of Serbians in the Chicago area does not mean that these are the same Serbians alleged to have been displaced from the Krajina region and who are putative class members in this action. It is just as likely that far more of those individuals continue to reside overseas and in the countries of the former Yugoslavia. The SDNY is geographically more convenient for all of those overseas individuals, including Plaintiff Jovic. *See Waste Distillation Tech., Inc. v. Pan Am. Res., Inc.*, 775 F. Supp. 759, 765 (D. Del. 1991) (denying transfer because chosen forum was closer to plaintiff's residence than proposed transferee district); *Eskofot A/S,* 872 F. Supp. at 95-96.

As to the Defendants, L-3 is headquartered in New York, New York, and its records are predominantly stored there. (Reilly Cert. ¶¶ 26, 27;) *see also In re Volkswagen of Am., Inc.*, 545

---

[5] That the other Plaintiff, Zivka Mijic, may reside in this District, without more, is insufficient to tip the scales in favor of venue in this Court. (Compl. ¶¶ 7, 10.) *See Beach v. United Airlines, Inc.*, 202 F. Supp. 2d 807, 808 n.1 (C.D. Ill. 2002) ("In his complaint, Plaintiff asserted that venue was proper here because he resided in the Central District. However, 28 U.S.C. § 1391 indicates that venue is determined by the activities of Defendant – not Plaintiff."); *Georgouses v. Natec Res., Inc.*, 963 F. Supp. 728, 730 (N.D. Ill. 1997) (named plaintiff's home forum is irrelevant in class action).

F.3d 304, 316 (5th Cir. 2008) ("That access to some sources of proof presents a lesser inconvenience now than it might have absent recent developments does not render this factor superfluous . . . [T]he district court erred [by not considering] this factor because it does weigh in favor of transfer."); *Anadigics, Inc. v. Raytheon Co.*, 903 F. Supp. 615, 617 (S.D.N.Y. 1995) (transfer granted when only connection between lawsuit and transferor district was fact that defendant did business there). Defendants' personnel are located in and around New York and Virginia, rendering the SDNY more convenient for discovery and trial. And, as noted above, the SDNY is a more convenient location for Plaintiffs too, as half of the class representatives and likely a substantial number of the putative class reside in Serbia or other parts of Europe. There is thus no reason for venue in this District other than that Plaintiffs' Counsel and one named plaintiff in a putative worldwide class reside in Chicago. These factors, in the context of a purported class action, are entitled to no weight. *Georgouses v. Natec Res., Inc.*, 963 F. Supp. 728, 730 (N.D. Ill. 1997) (named plaintiff's home forum is irrelevant in class action); *see also Chicago, R. I. & P. R. Co. v. Igoe*, 220 F.2d 299 (7th Cir. 1955) (convenience of counsel is not considered on motion to transfer venue under 1404); *Broadnax v ABF Freight Sys.*, 169 F.R.D. 628 (N.D. Ill. 1996) (same).

The convenience of key witnesses—especially non-party witnesses—also supports transfer to the SDNY: "[T]he convenience of non-party witnesses is more significant than party witnesses because party witnesses normally appear voluntarily." *Ill. Computer Research*, 2010 WL 4877501, *3. Former Ambassador to Croatia Peter Galbraith, who will almost certainly be a non-party witness in this case, is a Vermont state senator. Senator Galbraith has been a witness in a number of international trials related to the events in the Krajina and his testimony will be of significant relevance to this litigation. *See, e.g.,* Galbraith International Criminal Tribunal for the

Former Yugoslavia ("ICTY") Test. 5036:23-5037:1 (Jul. 24-25, 2008); *see also Scheidt v. Klein*, 956 F.2d 963, 966 (10th Cir. 1992) (district court must receive "some factual information relative to the materiality of witness testimony and [other relevant] considerations"). Compelling Senator Galbraith to participate in discovery and trial in Illinois could injure his constituents in Vermont, who would be deprived of his time and representation to a far greater degree than if this litigation were located on the East Coast (and particularly in a location between Washington, D.C. and Vermont). *See In re National Presto Industries, Inc.*, 347 F.3d 662, 664 (7th Cir. 2003) ("[T]he Court can take into consideration the expense ultimately borne by the tax-payers when a suit is filed in a remote forum.").

Retired Canadian General Alain Forand, who, according to Plaintiffs, has also testified on the events in the Krajina before the ICTY, reportedly resides near Montreal, Canada. The distance between Montreal and New York is almost half the distance between Montreal and Chicago and New York is therefore a more convenient venue for Gen. Forand.[6]

In addition, the Complaint is rife with allegations pertaining to the United Nations ("UN"), an organization with its headquarters, documents, and personnel concentrated in New York. (*See, e.g.*, Compl. ¶¶ 1, 33, 36-38, 40, 51, 56, 59, 66, 67, 77.) It is likely that UN witnesses will be critical to the fact-finder in this case and those witnesses' convenience will be greatly enhanced by transfer to the SDNY. Further, the UN's repository of documents can be found only at UN headquarters in New York City and across the East River in Long Island City, New York. Those archives house the records of the Secretary-General, Office of Legal Affairs, Department of Economic and Social Affairs, Office of Public Information, and Department of Political and Security Council Affairs, from which evidence bearing on the facts of this case

---

[6] The distance between Montreal and New York is 331.12 miles whereas the distance between Montreal and Chicago is 745 miles.

undoubtedly will be drawn.[7]   The fact that the UN is not amenable to subpoenas further underscores the importance of transfer to the SDNY because much of the effort related to this aspect of merits discovery will—of necessity—likely occur in New York.  *See Enplanar, Inc. v. Marsh*, 11 F.3d 1284, 1291 (5th Cir. 1994) ("Although these factors are usually considered in connection with securing the witnesses' and documents' availability for trial, they also necessarily implicate the ease of conducting merits-related discovery in a location which is near the relevant witnesses and documents.").

Finally, several of Defendants' former employees, whom Plaintiffs identify as "Individuals of Note" in the Complaint, are located in the National Capital Region, from which they could more easily travel to New York than to Chicago.  (*See* Compl. ¶¶ 15-18.)  Among these non-party witnesses are Carl Vuono (age 76), Vernon Lewis (age 80), Crosbie Saint (age 74), and Harry Soyster (age 75), all retired U.S. Army Generals residing in Northern Virginia. (Reilly Cert. ¶ 17.)  Each of these individuals could make a day trip to the SDNY, utilizing either the high-speed Amtrak Acela rail connection, automobile travel of a few hours, or a short commuter flight.  In contrast, air travel is the only reasonable option between Washington, D.C. and Chicago, necessitating flights 65% farther than the distance between Washington, D.C. and New York City.[8]   These witnesses may have extensive involvement in this case, requiring multiple visits to the jurisdiction in which the case is venued.  Accordingly, transfer of this action to the SDNY should be ordered to accommodate Plaintiffs' purported "Individuals of Note."

---

[7] U.N., Archives and Records Mgmt. Section, *available at* http://archives.un.org/unarms/doc/infosheets/ researcher_info1_about_un_archives.doc (last visited Dec. 11, 2010).

[8] The distance between O'Hare Airport in Chicago and Reagan National Airport in Washington, D.C. is 602 miles whereas the distance between LaGuardia Airport in New York City and Reagan National Airport is 211 miles.

## B.     Transfer to the SDNY Would Serve the Interest of Justice

In analyzing the interest of justice, three "public interest" factors should be considered on a motion to transfer: (1) administrative difficulties caused by court congestion; (2) local interest in the controversy and the burden of jury duty; and (3) the proposed forum's familiarity with governing law.  Taken together, these factors weigh in favor of transfer to the SDNY.

With respect to court congestion, this District and the SDNY have very similar statistics, meaning that consideration of this factor is neutral.[9]  As to the familiarity with applicable law, it would appear that the SDNY has an advantage over this District as it is the home of the UN's headquarters and the SDNY frequently adjudicates issues involving foreign sovereigns.  *See*, *e.g.*, *General Star Nat. Ins. Co. v. Administratia Asigurarilor de Stat*, 713 F.Supp.2d 267 (S.D.N.Y. 2010) (dispute concerning validity of judgment against Romanian government); *EM Ltd. v. The Republic of Argentina*, 720 F. Supp. 2d 273 (S.D.N.Y. 2010) (action against Republic of Argentina); *U.S. Titan, Inc. v. Guangzhou Zhen Hua Shipping Co., Ltd.*, 16 F. Supp. 2d 326 (S.D.N.Y. 1998) (dispute with corporation owned by People's Republic of China); *Am. Constr. Mach. & Equip. Corp. v. Mechanised Constr. of Pakistan Ltd.*, 1986 WL 2973, *6 (S.D.N.Y. Mar. 5, 1986) (dispute with wholly-owned corporation of Pakistani government).

The most compelling public interest factor is, however, the SDNY's interest in adjudicating this dispute.  New York courts and jurors have a strong interest in regulating the conduct of a New York-based business such as L-3.  *See Vanguard Mun. Bond Fund v. Thomson Publ. Corp.*, 974 F. Supp. 1159, 1163 (N.D. Ill. 1997) (holding that the SDNY had greater public interest than this District "because the conduct of businesses operating out of New York is at the

---

[9] The March 2010 report of the Administrative Office of the U.S. Courts states that the median time for a case to reach trial in the United States District Court for the Northern District of Illinois was 28.3 months whereas the median time for a case to reach trial in the S.D.N.Y. was 30.9 months.  *See Law Bulletin Publ'g Co. v. LRP Publ'ns, Inc.*, 992 F. Supp. 1014, 1020 (N.D. Ill. 1998) (congestion, relevant statistics are (1) median months from filing to disposition, and (2) median months from filing to trial).

heart of this matter[.]"). Further, the SDNY has a greater interest than other district courts in resolving disputes touching upon the conduct and activities of the UN. For example, in *United States v. Kim*, 246 F.3d 186, 187-88 (2d Cir. 2001), the Second Circuit held that the SDNY demonstrated a strong interest in adjudicating the prosecution of a New York resident, a former member of a UN peacekeeping force charged with crimes committed in the 1990s while deployed to Croatia. *See id.* Much like the defendant in *Kim*, if L-3—also a New York resident—is to be haled into court for actions potentially intertwined with the UN's efforts in Croatia during the Balkan conflict, the interest of justice favors venue in the SDNY.

## CONCLUSION

For all of the foregoing reasons, Defendants L-3 and MPRI respectfully request that the Court dismiss this action for lack of personal jurisdiction and for improper venue under Rules 12(b)(2) and 12(b)(3), respectively or, in the alternative, transfer venue to the SDNY pursuant to 28 U.S.C. § 1404(a).

Respectfully submitted,

s/ James E. Tyrrell, Jr.
James E. Tyrrell, Jr.
Joseph E. Hopkins
Lisa Ann T. Ruggiero
PATTON BOGGS LLP
One Riverfront Plaza, 6th Floor
Newark, New Jersey 07102
(973) 848-5600
*Attorneys for Defendants L-3 Communications*
*Corporation and MPRI*

s/ Joseph L. Pellis
Joseph L. Pellis, II
LEECH TISHMAN
FUSCALDO & LAMPL, LLC
3333 Warrensville Road, Suite 208
Lisle, Illinois 60532
(412) 261-1600
*Attorneys for Defendants L-3 Communications*
*Corporation and MPRI*